Filed 11/3/21  In re Josiah B. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JOSIAH B. et al., Persons Coming Under the Juvenile Court Law. | B309171 (Los Angeles County Super. Ct. No. 19CCJP07880AB) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. R.S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Brackelmanns, Juvenile Court Referee. Dismissed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

R.S. (mother) appeals from the juvenile court's jurisdictional finding that her substance abuse history and current abuse of marijuana placed her young children, Josiah and Joriah B. (born March 2018 and February 2019), at risk of harm. Mother does not challenge the other jurisdictional findings sustained as grounds for the court's assertion of jurisdiction over the children in this matter. Thus, jurisdiction will continue regardless of the outcome of this challenge. Because mother's appeal, even if successful, would not justify a reversal of the court's jurisdictional ruling or provide any other practical consequence, we decline to address it and dismiss the appeal.

## COMBINED FACTUAL AND PROCEDURAL BACKGROUND

**The family**

The family consists of mother, Josiah (21 months old at the time the petition was filed) and Joriah (10 months old at the time the petition was filed). The children's father is T.B. (father). Mother had a boyfriend during the proceedings, Richard S. (boyfriend).[1]

---

[1] Neither father nor boyfriend is a party to this appeal.

2

**Referral and initial investigation**

The family came to the attention of the Los Angeles Department of Children and Family Services (DCFS) on December 8, 2019, when law enforcement responded to a call from the Torrance Fire Department after it was reported that father had a seizure in a vehicle. The family had been living in the car for two weeks. The car was dirty and smelled of marijuana and cigarette smoke. There was a warrant for father's arrest and mother had a criminal protective order against father due to abuse.[2] The children were reported to be healthy with no signs of abuse. Mother had $1,000 in CalFresh benefits and was able to provide food for the children. Father was taken to the Men's Central Jail, medical unit. Law enforcement requested an immediate response to ensure that the children were safe to go with mother.

When interviewed mother disclosed a history of abuse. Both mother and father were in the foster care system as children. They had a history of homelessness and were living on the streets and with friends. Mother reported that the first incident of domestic violence between them occurred in June or July 2018. Father was arrested. Though mother was given an emergency protective order their roommate allowed father to return to the home. Mother then found out she was pregnant with Joriah and did not pursue a permanent restraining order.

Mother was approved for low-income housing in August 2018. She allowed father to spend the night and there was another incident of violence in January 2019. Mother reported

---

[2]    Father had a no bail warrant for an assault charge and possible coercion or bribery of a witness. The restraining order was issued on March 26, 2019, and expires on March 26, 2022.

that father was close to her face yelling at her. He pushed her and threw her phone, which broke. Father was arrested after this incident. Mother was evicted from the residence in March 2019 due to frequent arguing and father's destruction of the property by punching holes in walls and doors.

Mother and father moved in with father's cousin in San Bernardino. They moved out about a month prior to the referral when father had an argument with the cousin.

Mother reported that as a minor she had been diagnosed with manic depression and paranoia. She had been prescribed Zoloft and Risperdal, but she stopped taking her medications when she became pregnant with Josiah in 2017. Mother reported being sexually abused by a relative when she was a minor and hospitalized for psychiatric conditions at the age of 16.

Mother acknowledged using marijuana but denied any other drug use. Mother stated that she does not smoke in front of the children. Mother expressed that she was willing to stop smoking and drug test for DCFS. She also disclosed past use of methamphetamines for which she successfully completed a rehabilitation program. Mother could not recall the name of the drug treatment program.

Mother stated that father uses marijuana, and she believed but was uncertain that he also used methamphetamines.

Mother requested assistance entering a shelter. She wanted her children to remain with her but if she was not able to enter a shelter and remained homeless, she was willing to allow DCFS to care for the children until she was stable.

**Petition and detention**

On December 10, 2019, DCFS filed a Welfare and Institutions Code section 300 petition on behalf of the children,

4

alleging under count a-1 that the children were at risk of serious physical harm due to mother and father's history of engaging in violent altercations.[3]  The petition further alleged three counts under section 300, subdivision (b).[4]  In count b-1, the petition reiterated the allegations of domestic violence between the parents.  In count b-2, the petition alleged that mother had a history of substance abuse, including methamphetamine and currently used marijuana, which rendered her incapable of taking care of the children.  In count b-3, the petition set forth similar allegations of substance abuse by father.

The detention hearing was held on December 11, 2019. Mother was present, father was not.  The court found prima facie evidence that the children were described by section 300, detained them from father, and released them to mother.  Mother was not to allow father in the home, not to monitor father's visits with the children, and was to reside in DCFS-approved housing. The court directed DCFS to provide mother with low- or no-cost referrals for programs and to set up drug testing.

---

[3]     All further statutory references are to the Welfare and Institutions Code.

Section 300, subdivision (a) applies where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."

[4]     Section 300, subdivision (b) applies where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child," among other things.

**Jurisdiction/disposition reports**

DCFS filed a jurisdiction/disposition report in February 2020 in anticipation of the jurisdiction/disposition hearing.[5] Mother had provided additional information about her substance abuse, specifically that she used methamphetamine every other day in 2016 after being released from jail. Mother stated that she was on it for two weeks when she was living in a "drug house." Mother became ill and went to a hospital where she was told she was "losing . . . blood." This scared mother, and she did not use methamphetamine after that.

Mother began smoking marijuana in 2017 with father. They smoked three or four times a week. Mother smoked marijuana during the early part of her pregnancy with Josiah. Her doctor told her to wean herself off of marijuana and cigarettes. She participated in a program where she tested weekly, and if she tested negative, they would give her baby wipes and diapers. Mother participated for about three weeks. She then resumed smoking marijuana and drank alcohol one to two times per week. After Josiah's birth, mother stopped using for two weeks then started back again. After Joriah was born mother stopped smoking for one month then started again. Mother smoked daily. She stated: "After the kids were born, I smoked weed and drank alcohol, 1 to 2 times every day for 2 weeks. I smoked weed every day after the birth. I knew the way I was acting with a newborn wasn't right."

Mother denied smoking or drinking when she was alone with the children, but stated that she "had to drink and smoke

---

[5] The jurisdiction/disposition hearing was continued several times due to the pandemic. It did not take place until November 2020.

when I was around [father] because of the yelling." Mother explained that father was "cool" if he had substances; otherwise he was "yelling all the time." Father used money he got from panhandling to buy marijuana. When mother was pregnant and had nothing to eat father would tell her to go panhandle.

Mother was enrolled in empowerment, domestic violence, parenting classes and group therapy. Mother was a "no show" for a February 6, 2020 drug test, and tested negative on February 13 and 20, 2020.

As father remained incarcerated he was interviewed at Men's Central Jail. Father said mother "had a little addiction problem, but that all stopped when she got pregnant with the kids." Father stated that mother resumed smoking marijuana after Joriah was born because she had back pain. Mother smoked marijuana about twice a week while outside and normally when the children were sleeping.

Mother's drug tests revealed that she failed to show on February 25, March 3, March 13, March 18 and March 24, 2020.

In the DCFS report of July 2020 mother was noted to have consistently attended individual counseling weekly. The therapist reported that mother had a new boyfriend who was supportive of mother and the children. However, mother was not consistently drug testing. She had a positive drug test on December 10, 2019, two negative test results in February 2020, and was a no-show 22 times between January 2, 2020 and June 11, 2020. Mother submitted to an on-demand drug test on June 17, 2020, which returned positive results for marijuana metabolites.

**Ex parte application pursuant to section 385**

On October 6, 2020, DCFS filed an ex parte application pursuant to section 385 seeking detention of the children from mother following an incident of domestic violence between mother and boyfriend. Mother and boyfriend engaged in a verbal altercation that escalated to a physical level in which mother and boyfriend were choking each other. The children were in a different room and did not witness the incident. Boyfriend was identified as the "dominant aggressor" and was arrested. It was recommended that the children be detained in shelter care.

DCFS filed a detention report the same date. Following the incident with boyfriend, mother and the children were staying at a friend's home in Twentynine Palms. Mother had been evicted from her previous residence by boyfriend's former partner, sister, and others who boyfriend sent to "jump her." Mother was left without identification, birth certificates, social security card, EBT card, clothes, or diapers. Mother knew she was supposed to be attending parenting classes, domestic violence counseling, and drug testing, but said she was unable to do so due to her life circumstances.

Mother had previously admitted her drug use history, including her use of methamphetamine for one month in 2016. She claimed to have stayed sober since then, but admitted to smoking marijuana although she did not smoke in front of the children and only smoked if someone was there to watch the children. She also drank alcohol about twice a month.

A log of phone calls to boyfriend's place of residence revealed that police were called to the home three times between July 22 and August 22, 2020. The first incident (July 22, 2020) identified the suspect as mother, who had assaulted boyfriend.

The second call (August 22, 2020) identified boyfriend as the suspect.  He had engaged in a physical altercation, punctured tires with a knife, and made threats with a knife.  The third call (also August 22, 2020) identified boyfriend's sisters as suspects in a physical altercation.

DCFS social workers reported that mother was not compliant with services and had not made her residence available for them to assess.  Mother was also supposed to inform DCFS when she was in Los Angeles County so that the children could be seen by social workers.  Mother did not comply.  Mother had been provided with referrals for the Regional Center for the children and had not followed through with those referrals or with the children's doctor appointments.

DCFS took the children into protective custody.  On October 6, 2020, the juvenile court heard the section 385 petition and detained the children from mother.  The court allowed mother to have monitored visits with the children.  Neither father nor boyfriend could be present.  Regional Center referrals were ordered for the children.

**Last minute information for the court**

DCFS filed a last minute information for the court on October 23, 2020.  Mother had not had any in-person visits with the children due to her lack of transportation and work schedule.  Mother did not have a car and required a friend drive her to an upcoming scheduled visit.  She spoke to the children by telephone two to three times per week.  Mother was trying to find a domestic violence shelter in Los Angeles County to be closer to her children.

Mother had identified an agency in Twentynine Palms that provided parenting, domestic violence, and drug testing services; however, her enrollment was pending.

**Adjudication/disposition**

The adjudication and disposition hearing took place on November 2, 2020. Mother appeared on Webex. Father's whereabouts were unknown.

Mother's counsel argued that the petition should be dismissed as to mother. As to the drug count mother's counsel admitted that mother had "ups and downs" with testing but blamed mother's failures to test partially on the pandemic. Mother's counsel admitted that mother's positive tests were for marijuana but argued "it's not something that is of a greater concern such as methamphetamines or opiates." Mother's counsel argued that marijuana use without a link to potential harm is insufficient grounds for jurisdiction.

Counsel for the children argued that counts b-1, b-2, and b-3 should be sustained. Regarding mother's drug use, children's counsel argued that mother's testing had been inconsistent, and that she should be required to address her substance abuse. Children's counsel pointed out that mother admitted to methamphetamine use in the past as well as current marijuana use. DCFS submitted without comment upon the court's announcement that it intended to sustain counts b-1, b-2 and b-3.

As to count b-2 (mother's drug abuse) the court stated, "she does have a history of methamphetamine use and use of marijuana, and her testing has been inconsistent; so the court still believes that there's no kind of solid track record that the mother has addressed this issue as well, and this places the children at risk."

10

The court sustained counts b-1, b-2 and b-3. It declared the children dependents of the court, removed custody of the children from mother and father, bypassed family reunification services for father and ordered reunification services for mother. Mother was ordered into a full drug and alcohol program with aftercare, weekly random on-demand testing, and a 12-step program with a court card and sponsor; a domestic violence support group for victims; developmentally appropriate parenting; individual counseling addressing case issues including substance abuse and the effects on children; and compliance with the protective order.

On November 18, 2020, mother filed her notice of appeal from the jurisdictional order and findings.

## DISCUSSION

The juvenile court sustained three counts, which formed the basis for the decision to assert jurisdiction over the children. While mother challenges the sufficiency of the evidence as to the allegation that her drug use created a risk of harm to her children, she does not challenge the counts alleging that domestic violence between the parents created a risk of harm to her children or that father's drug use created as risk of harm to her children.

### I. Justiciability doctrine

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged

11

statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Here mother does not challenge the allegation that both parents had a history of domestic violence that placed the children at risk of harm. Nor does she challenge the allegation that father's drug use placed the children at risk of harm. Under the circumstances mother's challenge raises only """abstract or academic questions of law,""" which "will not result in a reversal of the court's order asserting jurisdiction." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*).) Thus we may decline to address the evidentiary support for the single challenged jurisdictional finding. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308.)

An appellate court may address the merits of a single jurisdictional finding against a parent where "the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*).)

## II. Mother's appeal is nonjusticiable

Mother asks that we exercise our discretion to address the merits of her appeal because the sustaining of count b-2 could be prejudicial to her in this case or in other future dependency proceedings. Mother provides only one vague example of such speculative prejudice: that "[a] sustained allegation against mother permanently stays on her child welfare record and could form the basis of the denial of services in a later case under section 361.5, subdivision (b)." Section 361.5, subdivision (b), provides 17 specific examples of reasons that a court may refrain

12

from providing reunification services. Mother does not address any of these specific subdivisions nor explain how the court's decision to sustain count b-2 alone could lead to the denial of reunification services in the future. Mother's argument lacks sufficient detail and is unconvincing. Mother's argument is insufficient to invoke the exception found in *Drake M.* to the rule that we generally will not address the merits of jurisdictional findings that do not affect a child's status as a dependent of the court.

We note that this case is distinguishable from *Drake M.* There the single jurisdictional finding that the father challenged involved the father's use of medical marijuana, was the difference between the father being an "offending parent" versus a "nonoffending parent." (*Drake M., supra*, 211 Cal.App.4th at p. 763.) The father "possessed a valid recommendation from a physician to use marijuana for treatment of his chronic knee pain." (*Id.* at p. 767.) The *Drake M.* court noted that in cases involving substance abuse, "'[c]ases finding a substantial physical danger [to the child] tend to fall into two factual patterns. One group involves an identified, specific hazard in the child's environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety.'" (*Id.* at pp. 766-767.) The *Drake M.* court held that "in cases involving the second group, the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Id.* at p. 767.) Although the child involved was only 14 months old, the *Drake M.* court determined that the evidence did

13

not support a determination that the father was a substance abuser as required under section 300, subdivision (b).  (*Drake M.*, at p. 767.)

In this case, as opposed to *Drake M.*, there is not a single jurisdictional finding making the difference between mother being an "offending" parent or a "nonoffending" parent.  Mother's behavior is also implicated in count b-1, which involved the parents' involvement in violent altercations.  Specifically, mother failed to protect the children in violation of a criminal protective order and allowed father to reside in the children's home with unlimited access to the children.  Mother does not challenge jurisdiction under count b-1.  Under the circumstances, any decision we might render as to count b-2 will not result in a reversal of the court's order asserting jurisdiction.  Nor will it render mother a "nonoffending" parent.

Further we note that unlike the father in *Drake M.*, mother's drug use was not limited to medical marijuana used with a valid doctor recommendation.  Instead mother admitted to recurrent substance use, even when her children were newborns, and admitted that she understood that her excessive use of substances with children of such a young age was "not right."  Mother does not challenge the facts that form the basis for the court's decision to sustain count b-2.  Instead, mother challenges the court's finding that her admitted drug use caused the children to be at risk of serious physical harm.  A reversal on this point will not undo mother's admissions of serious and consistent drug use throughout the period of time when her children were "'of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety.'"  (*Drake M., supra*, 211 Cal.App.4th at p. 767.)  Such

14

admissions could potentially be used against her in future dependency proceedings regardless of the true finding in count b-2.

The cases mother cites in support of her argument that we should review her claim on the merits are distinguishable. In *In re Nathan E.* (2021) 61 Cal.App.5th 114, the mother was the sole appellant challenging jurisdiction. The mother argued insufficiency of the evidence regarding two counts of domestic violence between the parents. The *Nathan E.* court chose to exercise its discretion in that case where domestic violence was the sole ground for jurisdiction. In contrast in this case the jurisdictional finding was based on allegations of domestic violence as well as allegations of drug use by both parents. Unlike a reversal of the domestic violence allegations in *Nathan E.*, a reversal of the finding regarding mother's drug use in this case is futile.

*In re D.P.* (2014) 225 Cal.App.4th 898 is also distinguishable. In that case the mother appealed a jurisdictional finding under section 300, subdivision (a), that she had intentionally harmed her daughter. Although there were other allegations supporting jurisdiction in the matter under section 300, subdivision (b), including drug use, the *D.P.* court elected to exercise its discretion to reach the merits of the challenge to that single jurisdictional finding under section 300, subdivision (a) because "the finding that mother intentionally hurt her daughter has the potential to impact future dependency proceedings." (*D.P.*, at p. 902; see *In re D.M.* (2015) 242 Cal.App.4th 634, 639 [exercising discretion to review mother's challenge to single jurisdictional finding against her of physical abuse of a child where the finding could be prejudicial to mother

15

and the finding also served as a basis for dispositional orders also challenged on appeal].)  In contrast as set forth above a reversal of the jurisdictional finding that mother's drug abuse placed her children at risk of harm will not change the impact of this case on future proceedings.  Mother does not challenge the jurisdictional finding that she failed to protect her children from the risks of domestic violence.  Mother also admitted excessive drug use when her children were infants.  Whether there was evidence that such drug use created a risk to her very young children is a purely academic question where jurisdiction over the children will remain under section 300, subdivision (b) regardless of the resolution of that question.

Under the circumstances of this case mother has failed to show that her challenge fits into the narrow exception created by *Drake M.*  For this reason we decline to exercise our discretion to address mother's appeal and dismiss the matter.  (*I.A., supra*, 201 Cal.App.4th at p. 1495.)

## DISPOSITION

The appeal is dismissed.

_____
CHAVEZ, J.

We concur:

_____          _____
LUI, P. J.                                HOFFSTADT, J.

16